## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MELVERT WASHINGTON, JR.,  :

    Plaintiff,  :

        v.  :    08-493-LPS

Hon. MICHAEL B. DONLEY,  :
SECRETARY OF THE UNITED  :
STATES AIR FORCE,  :

    Defendant.  :

## MEMORANDUM OPINION

Gary D. Berg, Thomas J. Reed, and Kenneth T. Kristl, Widener University School of Law Veterans Law Clinic, Wilmington, Delaware.

    Attorneys for Plaintiff.


Charles M. Oberly, III, Shannon T. Hanson, and Lauren M. McEvoy, United States Attorney's Office, Wilmington Delaware. Captain Joseph A. Smiga, AFLOA/JACL, Arlington, Virginia.

    Attorneys for Defendant.


July 29, 2011
Wilmington, Delaware

**STARK, U.S. District Judge:**

Presently pending before the Court are cross motions for summary judgment filed by Plaintiff Melvert Washington, Jr. ("Washington" or "Plaintiff") and Defendant Hon. Michael B. Donley, Secretary of the United States Air Force ("Secretary" or "Defendant"). (D. I. 26, 30) For the reasons set forth below, the Court will (1) deny Plaintiff's motion for summary judgment and (2) grant Defendant's motion for summary judgment.

## BACKGROUND[1]

This case arises out of a controversy spanning nearly three decades. Plaintiff served in the U.S. Air Force from May 25, 1973 until his discharge on or about July 15, 1984. (D.I. 27 at 6)[2] He was stationed at RAF Alconbury in the United Kingdom and was a member of the 10th Combat Support Group, 436th Air Base group, 10th Tactical Reconnaissance Wing. (*Id.* at 8) After being involved in a motor vehicle accident in which a friend was killed, Plaintiff began to suffer from anxiety and depression, and he was warned by his superiors of his sub-par performance of his duties. (*Id.* at 11) After complaining to the Inspector General of the Air Force regarding his unit's poor morale and leadership, Plaintiff was reassigned to a new position within his unit, and his Commanding Officer initiated an administrative separation for unsuitability against him. (*Id.* at 12) Captain William J. Faber was appointed to represent

---

[1]The facts presented are based on the parties' summary judgment filings and a review of the record created by the parties. Where there are disputes of fact, all reasonable inferences are drawn in the non-moving party's favor. As is evident from the Court's ruling on the motions, the Court does not find any genuine issues of material fact.

[2]Plaintiff alleges he was discharged on July 15, 1984 and on September 11, 1981. (D.I. 1 ¶¶ 8, 12) Defendant contends Plaintiff's discharge became final on February 15, 1984. (D.I. 4 ¶ 12) For purposes of evaluating the pending motions, it is immaterial which of these three dates is accurate.

Plaintiff in connection with the administrative separation proceeding. (*Id.*)

On January 10, 1983, while the administrative separation investigation was ongoing, Plaintiff was charged with two counts of violating article 134 of the Uniform Code of Military Justice ("UCMJ"). (*Id.* at 13) Specifically, Plaintiff was charged with wrongful use of a controlled substance (marijuana) and wrongful solicitation of marijuana from a junior enlisted member. (*Id.*)

On January 25, 1983, a special court-martial was convened and Plaintiff was tried on the use and solicitation charges. (*Id.*) Captain Richard C. Ourand was appointed as defense counsel. (*Id.* at 13-14) Although Plaintiff evidently provided Captain Ourand with a list of character references, Captain Ourand did not interview any of the individuals on that list. (*Id.* at 14) It appears that Captain Ourand failed to do so in part because the presiding Military Judge told Captain Ourand that character evidence would be inadmissible at the court-martial. (*Id.* at 121-22) Captain Ourand also failed to file a motion for a bill of particulars or present an alibi defense for Plaintiff. (*Id.* at 15)

At the court-martial, the prosecution relied on the testimony of three witnesses, each of whom were cross-examined by defense counsel. (*Id.* at 62-98) All three witnesses testified that Plaintiff either possessed marijuana or that he attempted to solicit marijuana from Amn. Ivan E. Wheeler III, his subordinate. (*Id.* at 66-94) Plaintiff was acquitted of the possession of marijuana charge and convicted on the solicitation charge. (*Id.* at 142) He was immediately sentenced to a Bad Conduct Discharge ("BCD") and reduction in rank from E-5 to E-1. (*Id.* at 153)

There followed a clemency period. Several events pertinent to the pending motions

2

occurred during this time between Plaintiff's sentencing and when his request for clemency was resolved. First, Captain Ourand was removed from Plaintiff's case. (D.I. 28 at 519-20, 527, 531) New counsel, less familiar with Plaintiff's case, was appointed. (D.I. 27 at 220) Second, the prosecution provided to Plaintiff's defense team evidence of a urinalysis test, which evidently found Plaintiff to be negative for the presence of marijuana in the time frame when he was allegedly soliciting marijuana from his subordinate. Plaintiff did not have this evidence during his trial or sentencing.

On March 7, 1983, the Convening Authority denied Plaintiff's request for clemency and approved his sentence. (*Id.* at 192-93) On July 27, 1983, the U.S. Air Force Court of Military Review ("USAFCMR") affirmed this ruling. (*Id.* at 220-21) Plaintiff did not appeal the ruling of the USAFCMR. (D.I. 28 at 401)

Nearly twenty-two years later, on July 6, 2005, Plaintiff filed a petition for a writ of error coram nobis[3] with the U.S. Air Force Court of Criminal Appeals ("USAFCCA") alleging that he had been unconstitutionally convicted during his court-martial due to ineffective assistance of counsel. (*Id.* at 335) Plaintiff argued that Captain Ourand's failure to investigate or call at trial character witnesses, file a bill of particulars, or prepare an alibi defense deprived him of his Sixth Amendment right to effective counsel, as well as his Fifth Amendment right to due process of law. (*Id.* at 321-27) The USAFCCA denied Plaintiff's petition on August 15, 2005, although (for unexplained reasons) Plaintiff did not receive notice of this adverse decision until December

---

[3]"The writ of *coram nobis* is an ancient common-law remedy designed to correct errors of fact." *U.S. v. Denedo*, 129 S.Ct. 2213, 2220 (2009) (internal quotation marks omitted). The Supreme Court has been "careful" to "limit the availability of the writ to 'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" *Id.* (quoting *U.S. v. Morgan*, 346 U.S. 502, 511 (1954)).

8, 2006. (*Id.* at 335-36; D.I. 1 at ¶¶ 46, 48)

Thereafter, on December 26, 2006, Plaintiff filed an appeal and writ petition with the U.S. Court of Appeals for the Armed Forces ("USCAAF"). (D.I. 28 at 390) On February 22, 2007, the USCAAF declined to hear Plaintiff's writ petition. (*Id.* at 389) On May 14, 2007, the U.S. Supreme Court denied Plaintiff's petition for a writ of certiorari. (*Id.* at 399)

Subsequently, on August 20, 2007, Plaintiff filed an application with the Air Force Board for Correction of Military Records ("AFBCMR" or "Board"), pursuant to 10 U.S.C. § 1552, seeking that his military records be changed to reflect an honorable discharge rather than a BCD. (*Id.* at 306) In this application, Plaintiff once again contended that his conviction was unconstitutional due to ineffective assistance of counsel. (*Id.* at 407-21) The AFBCMR denied Plaintiff's application on April 24, 2008. (D.I. 27 at 1)

On August 7, 2008, Plaintiff instituted this judicial action by filing a complaint against Defendant pursuant to 5 U.S.C. § 552a ("Privacy Act"), 5 U.S.C. § 701 *et seq*. ("Administrative Procedures Act" or "APA"), 28 U.S.C.§§ 2201-2202 ("Declaratory Judgment Act" or "DJA"), 10 U.S.C. 1552, and the Fifth Amendment to the Constitution of the United States. (D.I. 1) Plaintiff seeks judicial review of the decision of the AFBCMR denying his request to amend his military record to reflect an honorable discharge instead of a BCD. (*Id.*)

The complaint consists of three counts. Count I arises under the APA and contends that the Board acted arbitrarily and capriciously in denying Plaintiff's request to amend his record. (*Id.* at ¶¶ 57-58) In Count II, Plaintiff seeks a declaratory judgment that the Board's decision against him was unlawful and not supported by the evidence. (*Id.* at ¶¶ 59-60) Finally, in Count III, Plaintiff asserts a claim under the Privacy Act, alleging that the Board's decision not to

4

amend his record led to a failure to maintain that record with the accuracy, relevance, timeliness, and completeness required by statute. (*Id.* at ¶¶ 61-68)

On November 24, 2008, during the pendency of the instant litigation, Plaintiff once again petitioned the Board to revise his military record. (D.I. 28 at 506; D.I. 26 at 3) Armed with newly discovered evidence – about the existence of the negative urinalysis test and the circumstances under which Captain Ourand's representation of Plaintiff was terminated by superiors (D.I. 28 at 506-08; D.I. 26 at 10) – Plaintiff asked the Board to reconsider its previous denial of his requested relief. (D.I. 28 at 506-08) Consequently, both parties to this action sought a stay of the instant proceedings until the AFBCMR completed its review of Plaintiff's second petition, which the Court granted on December 23, 2008. (D.I. 12, 14) On May 18, 2010, Plaintiff's application for a change of military records was again denied by the Board. (D.I. 16)

The parties then filed and briefed their cross-motions for summary judgment. (D.I. 25-32) The Court heard oral argument on the motions on June 30, 2011. (D.I. 37) (hereinafter, "Tr.")

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Induc. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F. 3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a

party who failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## DISCUSSION

### I.    APA Claim

In Count I, Plaintiff contends that the Board violated the APA in that its refusal to provide the relief he sought – the change in discharge status from Bad Conduct to honorable – was arbitrary and capricious.  The Court concludes that the Board's decision was not arbitrary and capricious.  Additionally, assuming without deciding that the Court can reach the merits of Plaintiff's constitutional claims, the Court concludes those claims lack merit.

#### A.    The Board Did Not Act In An Arbitrary Or Capricious Manner

Pursuant to 10 U.S.C. § 1552, the Secretary of the Air Force has the authority to correct any military record of the Air Force through the AFBCMR when "the Secretary considers it necessary to correct an error or remove an injustice."  The Board does not have the authority to overrule the decisions of courts-martial; it does, however, have the power to grant clemency with regard to the sentence imposed.  *See* 10 U.S.C. § 1552(f); D.I. 32 at 4.

By Count I of his Complaint, Plaintiff seeks review of the Board's denial of his request to "correct" his military records – by changing his discharge from one due to Bad Conduct – under the APA.  A person suffering a legal wrong due to the actions of a government agency such as the AFBCMR is "entitled to judicial review thereof" under the APA.  5 U.S.C. § 702.  Under the APA, a district court may set aside agency determinations that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706. The court, however, is "not empowered to substitute its judgment for that of the agency."

7

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). Plaintiff bears the burden

of demonstrating by "cogent and clearly convincing evidence that the correction board acted

arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial

evidence." *Dodson v. U.S.*, 988 F.2d 1199, 1204-05 (Fed. Cir. 1993). A decision is deemed to

be arbitrary or capricious when the decision maker failed "to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983).

  The standard of review is particularly narrow when dealing with the actions of the armed

forces and their agencies. As Plaintiff acknowledges, "courts must show unusual deference to

the decisions of military service boards and affirm a board decision if it is plausible." (D.I. 30 at

6) (citing *Greenberg v. England*, 2005 U.S. Dist. LEXIS 22688 (D. Del. Oct. 6, 2005)); *see also*

Tr. at 17 ("[W]e have no basic disagreement with the general statements of law regarding our

burden of proof. We have to come to this Court showing that the decision of the Board . . . was

arbitrary and unreasonable."); *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("Orderly

government requires that the judiciary be as scrupulous not to interfere with legitimate Army

matters as the Army must be scrupulous not to intervene in judicial matters."). Moreover, there

is a presumption that "administrators of the military, like other public officers, discharge their

duties correctly, lawfully, and in good faith." *Chayra v. U.S.*, 23 Cl. Ct. 172, 178 (1991)

(internal quotation marks omitted).

  Despite the deferential standard of review, judicial review must nevertheless be

meaningful; a court is "not empowered to rubber-stamp the Board's decision simply because the

supporting evidence may be 'substantial' when considered by itself and in isolation from the

evidence that fairly detracts from the Board's conclusion." *NLRB v. Adam & Eve Cosmetics*, 567

F.2d 723, 727 (7th Cir. 1977). There must be a satisfactory showing that the decision being

reviewed was based on a "balanced consideration of all the evidence available and presented."

*Mozur v. Orr*, 600 F. Supp. 772, 783 (E D. Pa. 1985) (internal quotation marks omitted).

Turning to the case at hand, the issue is whether the Board's decision making process was

flawed, not whether the Board's decision was substantively correct. *See Dickson v. Sec'y of

Defense*, 68 F.3d 1396, 1405 (D.C. Cir. 1995) (stating judicial review of military personnel

decisions under APA is limited to determining whether "the decision making process was

deficient, not whether [the] decision was correct") (internal quotation marks omitted); *see also*

Tr. at 25-26 (Plaintiff's counsel agreeing). Here, it is clear that the AFBCMR considered all of

the relevant evidence before it, including the prior rulings of the military appellate courts, and it

is likewise clear that the Board's conclusions at least "minimally contain 'a rational connection

between the facts found and the choice made.'" *Dickson*, 68 F.3d at 1404 (quoting *State Farm

Mut. Auto Ins. Co.*, 463 U.S. at 43). In this case, the Board offered a sufficient basis for its

reasoning by relying on the totality of the materials before it, including opinions provided by

legal advisors.

The Court reaches these conclusions based on its review of the record, including the

Board's explanation of its decisions. The Board denied Plaintiff's initial application on April 24,

2008. (D.I. 27 at 1) As the Board noted, in that initial application Plaintiff contended that his

military defense counsel was incompetent in failing to investigate and call at trial character

witnesses and failing to challenge the vagueness of the dates of the offenses with which Plaintiff

was charged. (D.I. 27 at 2, 8) In evaluating Plaintiff's application, the Board had before it a

record which included a detailed legal analysis prepared by the AFLOA/JAJM (D.I. 28 at 401-

04), as well as Plaintiff's counsel's detailed response to that legal analysis (*id.* at 406-22). The

legal opinion provided to the Board recommended denial of the application as untimely (though

also noted that the Board had discretion to excuse the application's untimeliness) and

summarized Plaintiff's contentions, as well as the background legal standards. In analyzing

Plaintiff's specific contentions, the legal opinion stated:

> At the time of his court-martial, the Applicant . . . was in
> the process of being administratively discharged from the AF under
> applicable regulations for "unsuitability" to continued military life.
> His supervisor, First Sergeant and commander each provided
> evaluations describing the Applicant as very combative, hostile to
> the point of insubordination, demonstrating questionable
> acceptance of his NCO responsibilities and evincing an overall
> negative attitude toward his job. Given that background, defense
> counsel's decision not to pursue a "good soldier" character defense
> (and, thereby, put those same qualities in issue at trial) appears
> reasonable and warranted under the circumstances. Certainly, such
> a sound *tactical* decision does not constitute the type of serious
> deficiency warranting relief contemplated in *Strickland.*
>
> The government called three eyewitnesses to the events
> charged at trial. Although each witnessed described the
> Applicant's activities with regard to use and solicitation of
> marijuana with varying degrees of specificity, none was *able* to
> meaningfully narrow the particular timeframes of the incidents
> charged. Clearly, a bill of particulars requesting that the
> government provide details (more specific dates) that the
> government's own witnesses asserted under oath they could not
> recall would have amounted to no more than a pointless exercise in
> futility. The records shows the periods charged were based on the
> best evidence available to the government. Those periods fell
> well-within the notice standards required by applicable law and the
> record of trial of which those specifications are a part has

withstood *two* full rounds of appellate scrutiny . . . . Given the *inability* of the witnesses to further narrow the timeframes involved, defense counsel pursued the most logical course open to hm and thoroughly cross-examined each witness concerning the lack of specific dates and more detailed memories, in an effort to establish that their testimony was unreliable, inaccurate, or otherwise incredible. That defense effort contributed significantly to a full, fair and vigorously contested trial on the merits which, in turn, placed the court-martial panel, as ultimate fact-finder, in the best position to evaluate the evidence and determine whether it established the Applicant's guilty beyond a reasonable doubt. The nuanced and mixed verdict that resulted (acquittal of use of marijuana and conviction of solicitation) is a concrete and substantial indicator of the fairness of the trial process, as well as, a demonstration of the measure of success, skill and care with which defense counsel carried out his trial responsibilities.

(*Id.* at 402-03)

The Board concluded:

Insufficient relevant evidence has been presented to demonstrate the existence of error or injustice. . . . We find no evidence which indicates the applicant's BCD and reduction in rank, which had their bases in his conviction by special court-martial and were parts of the sentence of the military court, were improper or that they exceeded the limitations set forth in the Uniform Code of Military Justice (UCMJ). Furthermore, because of the seriousness of his misconduct; that is, his solicitation of a junior enlisted member to obtain marijuana and transfer it to him, we are not inclined to afford him any relief based on clemency at this time.

(D.I. 27 at 4)

In November 2008, Plaintiff requested reconsideration of the Board's denial of his

application, based on newly-discovered evidence he contended had not been reasonably available

at the time of his initial application. (D.I. 28 at 506) As the Board observed, the new evidence

was the documentation relating to the negative urinalysis test that had not been provided to

Plaintiff at the time of his trial as well as evidence of the alleged irregularities surrounding the

termination of Captain Ourand's representation of Plaintiff. (*Id.*) Again the Board had before it

an extensive record. (*Id.* at 505-91) Again, this record included another legal opinion (*id.* at

564-65) as well as Plaintiff's response to that opinion (*id.* at 587-91). The new legal opinion

included the following:

> From my review of the file, it is questionable whether this
> [purportedly newly-available] evidence was not reasonably
> available earlier, and it certainly was available at the time of
> appellate court review, but I would recommend the applicant
> receive the benefit of the doubt on this issue.
>
> . . . .
>
> . . . Finding an error or injustice to grant clemency is not
> necessary. . . .
>
> Clemency is a very broad, and to a certain degree,
> amorphous concept. Individuals who are in a position to grant
> clemency are influenced by, and give weight to, different factors. . .
>
> The panel is of course free to use any basis that it finds
> appropriate to support clemency, but basing clemency on a[] legal
> error analysis for a UCMJ action []would appear to be inconsistent
> with, if not subversive of, the AFBCMR's statutory limitation to
> clemency in such matters. Nevertheless, it is a fine line between a
> factor such as poor (but not legally inadequate) counsel
> representation, or not being provided evidence that was routinely
> provided at the time of trial (and currently mandated) being an
> error and having it constitute a mitigating circumstance that could
> support clemency on the sentence. It is for the panel to decide on
> which side of the line these arguments fall.
>
> Here, rather than attack the performance or trial tactics of
> the counsel, he argues counsel could not perform adequately on
> clemency matters because he was being removed inappropriately
> and was generally distracted by personal and professional
> controversy. . . . It is clear from the fact that there was such
> extensive appeal of his case that some other attorney took up the

case. The AFBCMR is not in a position to investigate or [evaluate] his or her performance. The presumption of regularity would establish that he or she would have become familiar with the case including the negative urinalysis, and the removal of the first counsel, and evaluated its importance on the appeal. On the other hand, in fairness to the applicant, his assertion that the best window to have the convening authority grant clemency was at least compromised by the timing of counsel replacement does have some validity, although this can occur even with routine counsel separation or routine.

(*Id.* at 564-65)

The Board then concluded:

> After again reviewing this application and the evidence provided in support of his appeal, we remain unconvinced the applicant has been a victim of an error or injustice. We have previously determined that the applicant's BCD and reduction in grade to airman basic (E-1), which was the sentence he received following conviction. . . was neither improper not excessive. While the applicant's contentions are duly noted, his latest submission has not persuaded us otherwise. Further, we remain unconvinced the seriousness of his misconduct has been overcome by his post-service activities. While we acknowledge his accomplishments since his discharge, we are not compelled at this time to upgrade his BCD to honorable or restore his previous rank on the basis of clemency.

(*Id.* at 508)

The Board is not required to spell out the minutiae of its logic in reaching a decision; it is sufficient if there is enough evidence to allow the Court to discern how the Board reached its decision. Here, this requirement is satisfied. There is no indication that the Board "failed to consider an important aspect of the problem." *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43. The Board also specifically stated that it "took notice of the . . . complete submission" of Plaintiff's evidence, which it found insufficient to warrant a grant of clemency. (D.I. 27 at 3-5)

13

Simply put, the Court finds no basis, under the very narrow and deferential legal standards that apply, to disturb the Board's determination.

## B.    Plaintiff's Constitutional Claims

Plaintiff contends he was "unjustly and unconstitutionally convicted of soliciting a controlled substance," and that the Board's failure to recognize this – and its consequent rejection of his request for a change in discharge status – was arbitrary and capricious. (D.I. 30 at 2)  He contends that his attorney, Captain Ourand, provided constitutionally ineffective assistance, likely because undue influence was being exerted on him during the time Captain Ourand was working on Plaintiff's case.  Plaintiff further contends that the prosecution committed a "*Brady* violation" by failing to provide him with evidence of a negative urinalysis test.  In short, Plaintiff insists that "clear and cogent evidence submitted by him to the AFBCMR showed that his 1983 court martial conviction was obtained by violating his Fifth and Sixth Amendment right to a fair trial." (D.I. 30 at 7)

Plaintiff faces numerous procedural hurdles in his effort to place his alleged constitutional violations before the Court.  For example, the Board does not have jurisdiction to review these constitutional issues, or to vacate Plaintiff's conviction, and the Court cannot remand the matter to the Board with direction to take action the Board is not empowered to undertake.  *See Williams v. Sec'y of Navy*, 787 F.2d 552, 556 (Fed. Cir. 1986).  Further, under Section 876 of Title 10 of the Military Code, all military court decisions are considered final and conclusive.  *See* 10 U.S.C. § 876.  Also, to the extent Plaintiff is asserting a Due Process claim, it appears to be an attempted end-run around the APA and Privacy Act, which impose particular standards of

review and procedural requirements (e.g., exhaustion).[4] Nevertheless, the Court will assume, without deciding, that it has jurisdiction to reach the merits of Plaintiff's constitutional claims. As explained below, the Court concludes that none of these constitutional claims is meritorious.

If the Court were to reach the merits of Plaintiff's constitutional claims, the disposition of the pending motions would be unchanged. The test for setting aside court-martial convictions and subsequent denials of appellate review generally requires an inquiry into whether those "military rulings on constitutional issues conform to Supreme Court standards." *Kauffman v. Sec'y of the Air Force*, 415 F.2d 991, 997 (D.C. Cir. 1969). Those seeking relief "must demonstrate convincingly that in the court-martial proceedings there [was] such a deprivation of fundamental fairness as to impair due process." *Bowling v. U.S.*, 713 F.2d 1558, 1561 (Fed. Cir. 1983) ("[A] constitutionally unfair trial takes place only when the barriers and safeguards are so relaxed or forgotten . . . that the proceeding is more a spectacle . . . or trial by ordeal . . . than a disciplined contest.") (citing *U.S. v. Augenblick*, 393 U.S. 348, 356 (1969)).

Plaintiff's constitutional claims begin with his contention that he received constitutionally ineffective assistance of counsel in connection with his court-martial. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A criminal defendant must show that counsel's performance was deficient – in other words, that counsel made errors serious enough so that counsel was not functioning as guaranteed by the Sixth Amendment. *See id.* at

---

[4]Although some of his filings were unclear on the point, *see* D.I. 1. at ¶ 2.d; D.I. 30 at 17-18, at the hearing Plaintiff's counsel confirmed that Plaintiff is not attempting to assert a separate Due Process claim. (Tr. at 25)

688. Additionally, it must be shown that this deficient performance prejudiced the defense and effectively deprived defendant of a fair trial. *See id.* In determining whether counsel's performance was ineffective, the court employs an objective standard of "reasonably effective assistance" considering all circumstances. *See id.*

In proving that counsel was ineffective, Plaintiff must do more than "show that the errors had some conceivable effect on the outcome of the proceeding," and must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94. Courts must be highly deferential in scrutinizing counsel's performance, and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90.

The record in the instant case does not show that Washington was deprived of his right to effective assistance of counsel. The Court is not convinced that Captain Ourand's performance as Washington's defense counsel was deficient. To the contrary, the Court concludes from the record that Captain Ourand executed his duties in a manner that comports with the objective standard of reasonably effective assistance. (D.I. 27 at 33-154) One seeming manifestation of Captain Ourand's effectiveness is the fact that Plaintiff was acquitted of one of the two charges on which he was tried.

Plaintiff also contends that his relationship with Captain Ourand was wrongfully interfered with and then terminated, and that Captain Ourand, as a result of being harassed by his superiors, was unable to perform as a zealous advocate. (D.I. 30 at 13) The Court is not persuaded by Plaintiff's argument that, but for the alleged interference with the attorney-client

relationship, Plaintiff's sentence would have been commuted by the reviewing authority following the clemency hearing. Plaintiff contends that had Captain Ourand been able to meet with the Wing Commander, General Cathey, Captain Ourand could have persuaded General Cathey to accept the recommendation that Washington be granted clemency. (*Id.* at 11-12; D.I. 28 at 520 (Captain Ourand declaring: "If I had been allowed to finish his case, I believe Gen. Cathey might have determined Ssgt Washington should have been acquitted of the solicitation specification and the charge or, at least would have followed the recommendation of the Formal Clemency Officer and disallowed the BCD and ordered a General Discharge instead.")) This is pure speculation. Furthermore, according to the Board's legal expert, attorneys are routinely separated and rotated out of military court martial and clemency proceedings. (*See* D.I. 28 at 565) Moreover, Plaintiff was represented by counsel throughout the clemency proceedings, and there is no reason to conclude that the attorney who succeeded Captain Ourand was ineffective.[5]

Additionally, Plaintiff claims that Captain Ourand's failure to call good military character witnesses, file a motion for a bill of particulars, or submit an alibi defense is reversible error. (D.I. 30 at 14-18) But each of these decisions was well within the range of decisions that would be made by effective, competent counsel. With regards to the failure to call character witnesses, the evidence indicates that those witnesses would not have provided favorable impressions of Washington to the court-martial. The paralegal that worked with Captain Ourand to prepare

---

[5]Plaintiff cites to *DuBay v. U.S.*, 37 C.M.R 411, for the contention that whenever there is a suggestion of improper command influence affecting a court-martial, the convening authority loses the right to proceed. (*See, e.g.*, Tr. at 15-16) But, even assuming Plaintiff is correct that "after almost 30 years, it's impossible for us to go back and hold a *DuBay* [hearing] in this case" (Tr. at 16), that fact does not render the Board's decision – which is what is under review by the Court, and which was reached after considering Plaintiff's improper influence argument – arbitrary and capricious.

Plaintiff's defense has declared that "all of the witnesses provided to us by Ssgt Washington were contacted by me and their comments about Ssgt Washington were not favorable except that his dress and appearance standards were impeccable." (D.I. 28 at 522)[6] Plaintiff's contention with respect to the bill of particulars and an alibi defense relates to the broad nature of the criminal charges he faced, which alleged that he solicited marijuana between March 1, 1982 and May 30, 1982, and that he used marijuana between February 1, 1982 and April 30, 1982. (D.I. 27 at 36) Plaintiff believes that Captain Ourand should have asked the court-martial to direct the prosecution to be more specific, so that he could more effectively defend himself, including with an alibi defense. Such a course of action, however, would likely have proven futile, as it is plain from the testimony of the prosecution's three witnesses that they (and therefore the prosecution) could not be more specific about the date of Plaintiff's criminal conduct. Captain Ourand attacked the government's case, and its lack of precision in terms of dates, by cross-examining the government's witnesses on this point. (*See id.* at 62-98) This is not a constitutionally defective choice by counsel.

Finally, Plaintiff contends that the prosecution violated his constitutional rights by withholding from him evidence that he had tested negative for the presence of marijuana in a urinalysis at the time of his arrest. Plaintiff submitted to a urinalysis during the time when his quarters were searched, on November 5, 1982. (D.I. 28 at 523; D.I. 27 at 211; D.I. 30 at 9)

---

[6]Thus, even if, as Captain Ourand declares, the judge had informed him that he would not allow character witnesses during the trial (D.I. 28 at 519), and even if this were an erroneous decision by the court-martial, the fact remains that there is no indication that the defense team had any good character witnesses it could have called. As Captain Ourand explained, he " had no one to call as a good conduct witness . . . because none of the witnesses wanted to be seen as condoning a NCO who used or solicited drugs from subordinates." (*Id.*)

Under *Brady v. Maryland*, 373 U.S. 83 (1969), the withholding of exculpatory evidence by the prosecution can be reversible error. "If the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." *U.S. v. Agurs*, 427 U.S. 97, 112 (1976).

Here, the Court is not persuaded that the withheld urinalysis would have resulted in a different trial verdict, especially given that the Plaintiff was acquitted of the use of marijuana charge. While it arguably would have weakened the prosecution's case on the solicitation charge had Plaintiff been able to present to the court-martial his negative urinalysis, the Court does not conclude that this additional piece of evidence would have created reasonable doubt. The results of the urinalysis test, even if wrongfully withheld during the trial stage, were not critical to a "pivotal legal issue," *see U.S. v. Jackson*, 59 M.J. 330, 335-36 (2004), in terms of deciding whether Washington was guilty of the solicitation charge; one does not have to use marijuana to be guilty of soliciting it. The testimony of the three prosecution witnesses could still have provided proof beyond a reasonable doubt to convict Plaintiff on solicitation if such testimony was believed, as evidently it was, by the court-martial.

Moreover, the relief requested by Plaintiff is not the vacating of his conviction; rather, he is seeking a modification of his sentence, i.e., the change in discharge status. Plaintiff made the same request at his clemency proceeding, and at that time he had obtained the negative urinalysis. Plaintiff's attorney, however, did not present the negative urine test in the clemency proceeding. This supports the Court's conclusion that the withheld urinalysis would not have altered the outcome of the proceedings had it been provided to Plaintiff prior to trial.

19

## C.    Conclusion

The Board twice considered Plaintiff's application for change in discharge status, and, based on the evidence before it, twice denied that application. The Court concludes that the Board did not act arbitrarily or capriciously. Nor has Plaintiff presented a meritorious constitutional claim. Accordingly, the Court will deny Plaintiff's motion for summary judgment on his APA claim and grant Defendant's motion for summary judgment on this same claim.

## II.    Privacy Act Claim[7]

Count III seeks review of the Board's decision pursuant to the Privacy Act. This claim rests on Plaintiff's contention that, in denying his requested relief to amend his records and change the status of his discharge, the Board failed to maintain Plaintiff's records with accuracy. The Court concludes that Defendant is entitled to summary judgment on Plaintiff's Privacy Act claim.

Pursuant to the Privacy Act, an individual may file suit against a federal agency for failure to amend a record regarding that individual in accordance with that individual's request. *See* 5 U.S.C. § 552a(g)(1); *see also* 5 U.S.C. § 552a(d) (setting out process for seeking amendment of record pursuant to Privacy Act). However, the Privacy Act "is not a vehicle for amending the judgments of federal officials." *Kleinman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992). Hence, the Privacy Act "may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions." *Rogers v. U.S. Dep't Of Labor*, 607 F. Supp. 697, 699 (N.D. Cal. 1985). If an agency's decision accurately reflects the conclusions that

---

[7]The Court addresses Count III before Count II because that is the order in which it was presented by both parties in their briefs and in oral argument.

it reached, a court cannot amend the document, regardless of "how contestable the conclusion may be." *Douglas v. Agric. Stabilization & Conservation Serv.,* 33 F.3d 784, 785 (7th Cir. 1994); *see also Bernard v. U.S. Dep't of Defense,* 362 F. Supp. 2d 272, 280-81 (D.D.C. 2005) (rejecting Privacy Act challenge to substantive judgments made in administrative proceedings).

Within the Air Force, if an applicant seeks the correction of a factual wrong, he must request a correction from the Air Force Records Systems Manager. *See* 32 C.F.R. § 806b.26. Denial of such a request may then be appealed through the denial authority to the Secretary of the Air Force, Fiscal and Administrative Law Division. *See id.* A denial at this level is reviewable by a court. *See id.* If, alternatively, one is requesting correction of "subjective matters and opinions" contained in Air Force records, such a request must be presented to the AFBCMR. *See* 32 C.F.R. § 806b.24. Importantly, "record correction requests denied by the Board are not subject to further review under [the Privacy Act]." *Id.; see also Douglas,* 33 F.3d at 785 ("Privacy Act does not authorize relitigation of the substance of agency decisions."); *Blevins v. Plummer,* 613 F.2d 767, 768 (9th Cir. 1980) (limiting corrections of military records sought under Privacy Act to factual matters).

Here, it is not entirely clear whether Plaintiff is challenging the factual accuracy of his records or the subjective opinion of federal officials as embodied in his records.[8] Either way, however, Plaintiff cannot prevail. To the extent he is raising a factual challenge – e.g., he was not, in fact, guilty of soliciting marijuana from a subordinate – he failed to exhaust his

---

[8] At the hearing, Plaintiff's counsel described the Privacy Act claim as "based on two points." (Tr. at 25) They are that Plaintiff's records do "not show that his conviction was accomplished by a violation of his constitutional rights" and that if his records were corrected to show the violation of his rights, "then his rank and military status as a sergeant, staff sergeant E6, ought to be restored." (*Id.*)

administrative remedies, as he failed to request review by the Air Force Records System Manager ("AFRSM"). (D.I. 26 at 22-26; D.I. 27; D.I. 28) Plaintiff's failure to exhaust his administrative remedies is fatal to his Privacy Act claim. *See Anjelino v. The New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999) ("[I]t is a 'basic tenet' of administrative law that a plaintiff should timely exhaust all administrative remedies before seeking judicial relief . . ."). Alternatively, to the extent Plaintiff is not raising a factual challenge but is, instead, seeking review of the subjective judgment of the Board – e.g., that he was properly denied clemency – no judicial review of such a determination is available. Section 806b.24 of Title 32 provides that there is no further review after a Board decision denying a challenge to "subjective matters and opinions" embodied in records. *See also Castella v. Long*, 701 F. Supp. 578, 585 (N.D. Tex. 1988) (stating amendment request under Privacy Act is "not a vehicle for amending the judgments of federal officials or of other parties as those judgments are reflected in records maintained by federal agencies.").

Accordingly, with respect to Count III, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment.

## III. Declaratory Judgment Claim

In Count II, Plaintiff seeks a declaratory judgment that the AFBCMR's decision not to correct his military record to reflect an honorable discharge was unlawful and not based on the evidence. He seeks a declaration of entitlement to a change of discharge status from BCD to honorable, as well as a restoration of rank.

The Declaratory Judgment Act allows courts to "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "The Act does not create substantive rights for parties; it merely provides

another procedure whereby parties may obtain judicial relief." *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978). Accordingly, the Act is not a separate basis for exercising jurisdiction over a matter; a court must have another independent basis for jurisdiction before addressing a request for a declaratory judgment. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

The Court agrees with Defendant that the Court's ruling on Plaintiff's APA and Privacy Act claims necessarily also resolves his declaratory judgment claim. (D.I. 26 at 31) Accordingly, for the same reasons given above with respect to Plaintiff's APA and Privacy Act claims, the Court will deny Plaintiff's motion for summary judgment on his declaratory judgment claim and will grant Defendant's motion for summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment. An appropriate order follows.